1-8-1-8-0-1 Michael Cowles v. Federal Bureau of Investigation Good morning and may it please the Court. Ezekiel Hill of Goodwin-Proctor for Plaintiff and Federal Bureau of Investigation, and I am pleased to be here today to discuss the new DNA evidence in the Supreme Judicial Court's 1994 murder convictions. They now face retrial, but the analysis of DNA evidence in this case is far from complete. That's because the FBI determined that a DNA sample found from a used condom found at the crime scene next to the victim's body was not connected to the crime and thus ineligible for upload to the federal DNA database. If it was uploaded, it would be able to be compared to about 16 million existing DNA profiles. That ineligibility determination by the FBI is arbitrary and capricious and therefore it must be set aside. It's arbitrary and capricious for two reasons. First, the FBI reasoned that the condom was not linked to the murder because the DNA testing did not show the presence of the victim's DNA. That reasoning reflects the fundamental misunderstanding of the testing that occurred in this case. The condom itself has never been tested for DNA. What was tested for DNA was a swab that was taken of sample fluid found inside the condom. Counsel, let me ask you this. The FBI at this point knows that only the inside of the condom was swabbed. Had they modified their position on that particular rationale at all? They have not, Your Honor, and based on the briefing in this case, my case, before the district court, the defendants took the position that, well, of course the DNA testing would have included the outside of the condom because that would include the DNA profile of whoever the condom came into contact with. Yeah, but they know now. I take it that they do know now, but there's been no modification of the government's position. Do you understand the FBI to be giving two independent reasons or one cumulative reason? As I read their written determination, I think it's cumulative reason because there's a particular factor that they apply. Is this profile attributable to a puritative perpetrator? And they considered a particular scope of evidence and determined that it was not. Now, one of the primary facts that they considered is the fact that the DNA evidence obtained from the swab did not include the victim's DNA. There's also in the FBI's written determination a reference to notes by a forensic scientist who, in 1993, was at the crime scene and collected the condom. Those notes reference the condition of the condom, but I would note that the forensic scientist who wrote those notes, she was actually at the crime scene. She actually saw the condom. She actually saw the crime scene, and she made the determination to collect the condom as evidence, took it back to the laboratory, tested it for hair and fiber and the presence of seminal fluid. There was not DNA testing. So their rationale is that based upon the condition of the condom when it was found and the proximity, which I guess is debatable, but the proximity of the condom to the victim, that their independent reasoning suggests that it couldn't be associated with the crime scene. Well, I think that the FBI does reference that in their determination, and I think that's arbitrary and capricious as well. They also make the point about time frame. Focusing on the condition of the condom, it suggests that it may have been there at a very different time frame. A time frame which would suggest that it had nothing to do with the crime at issue. Wasn't that also an important element of the determination? They refer to the forensic scientist's notes that the condom was breaking apart, but I would note that the forensic scientist who wrote that also believed that the condom was relevant to the crime. That's why she collected from the crime. Why is that relevant to our analysis? The FBI clearly doesn't think that it's connected. So why is it relevant that some other investigator did think that? As long as it wouldn't be arbitrary to think that it was too remote from the circumstance of this crime, don't we have to uphold it even under arbitrary and capricious review if we get to that? Well, I think, first of all, the FBI's decision must be taken as a whole, and their reasoning, the primary reason is there's no DNA evidence linking this, the condom, to the victim, and because the swabs were tested, that's not a reasoned analysis. Why do you say that's their primary reason? Well, I think if you review the FBI's determination, they specifically identify that there was no genetic material from the victim found on the condom, no forensic link between... But don't they say both? I'm sorry? They say both, don't they? The FBI's determination does also mention the condition of the condom, but I think to step back, the reason that the FBI's reliance on the condition of the condom would be arbitrary and capricious is that they did not examine the condom. They're taking a snapshot of the forensic scientist's notes. That forensic scientist made a determination that the condom was connected to the crime. That's why she collected and tested it, and moreover, the condom was treated as relevant, as connected to the crime, for 25 years. Evidence about the condom was introduced at trial in 1994, and it was only in 2017 when DNA testing that the Commonwealth undertook revealed the condom was not linked to the plaintiffs in this case. I'm sorry, how was it introduced at trial? The condom itself was introduced at trial? The condom itself was not introduced, but the forensic scientist who completed the swabs testified at trial about collecting the condom from the crime scene, about testing the condom, and about there being seminal fluid inside the condom. But the FBI had nothing to do with that earlier determination, correct? That's correct. The FBI was not involved in this case at that point. Just so I understand something, there's no way now to test this evidence in a way that could possibly reveal a DNA link to the victim, is that right? I'm not in a position to... You're not representing that that is possible. I don't know whether that's possible or not. You're not representing that that's possible. Correct. So I guess here's just one way to understand maybe what the FBI is saying. You tell me why this would be arbitrary and capricious. We think from the condition, this is how I could read the FBI reasoning, we think from the condition of the evidence, it doesn't appear to be linked to this particular crime because of the condition it was in, where it was found, etc. And there's nothing about it that contains evidence that would provide a basis for us to conclude that notwithstanding its condition, it is linked to that crime. So in those conditions, with those two things being true, what is arbitrary about the FBI saying is just, you know, it's a judgment call, but we think all things considered, it's sufficiently disconnected that we are not in a position to upload it. In other words, if it's the case that there's no way to find DNA on this evidence that could link it, or if there's no representation in the record that there is a way to find it, you're not saying they have an obligation to retest it to find if there's a connection to the victim. So given what they've got, what is arbitrary about them putting those two things together? Well, I think that the arbitrary and capricious standard requires the agency not, that their reasoning is consistent with the evidence before them. And this reasoning is not consistent with the evidence before them because they assume that the condom was tested for DNA and the condom was not tested for DNA. And so if this determination was set aside and the FBI reevaluated their position, they could take a different position and conclude that whether or not the victim's DNA was on the condom is not important to their punitive perpetrator determination. But that's not the FBI decision that's before them. What could they do that would change their view on that? What could the FBI do? I don't quite understand. What is going to provide the link between this evidence and the crime? Well, in my view, the condom is linked to the crime. Just by its presence? By its presence and by the judgment of the forensic scientists who collected it. Now, the FBI rejected that conclusion. The FBI rejected that conclusion. But what's arbitrary about the rejection of that? It can't be that I don't really understand the point about the testing. That doesn't seem to me to relate to why the FBI is saying. They're just saying there's nothing about it that has DNA evidence that ties it. And in light of its condition and its presence and where it was, we think, notwithstanding the investigator, it's not close enough. So what's arbitrary about that? Just that it is close enough? But while you're thinking about that question, I thought your argument was that if it were tested and, in fact, proved to be one of the other suspects, then it would be the connection. Well, certainly, if the profile was run through the federal database and there was a match, then that would provide information about who potentially was a perpetrator of this crime. But that just shows it matched someone. Right, that would show it matched someone. So what? It's going to match someone, potentially, but that won't tell us that it's connected to the crime. Excuse me, Counselor, you have focused, if I understand you correctly, on the fact that the condom itself has not been tested for any discernible DNA. You're suggesting that it may be that the surface of the condom will reveal DNA of the victim. Is that your basic premise? Is that correct? It may or may not. But if that were to happen, it would then be connected to the crime, right? That's your position. Yes, but what's before the court today, moreover, is that the FBI's reasoning assumes that the condom was tested when, in fact, it was not tested. And the FBI's determination cannot stand when it's based on a position that fails to acknowledge the evidence that was before it. Could you just address the question of whether we should even be talking about the arbitrary capricious review as the government presents the case we shouldn't be because this is a question committed to agency discretion by law? Sure. So in this instance, the agency determinations or agency actions are not subject to judicial review when there is no meaningful standard to apply. In this case, there's clearly a meaningful standard to apply, and that's provided by the FBI manual. And, in fact, the FBI applied the manual itself in making the analogy. Is that last point critical to your argument, that the FBI applied it? I don't believe so. I think if the FBI had chosen not to apply it. Suppose the FBI said, look, this just seems to us too remote. We're not trying to upload something. We're trying not to upload something. And when there's no obligation in the statute to upload anything, where is your position that there is an obligation under the statute to upload something? Once the FBI captained its discretion by putting the manual in place, it had an obligation to follow the procedures it put in place. But I don't read the manual to say you must upload anything. I read it to say you can't upload certain things. That's correct. But the manual provides a process for determining eligibility. And the challenge here is that the FBI said that was not an obligation. What's wrong if they put it in and somebody who then was matched wanted to complain and say you should never have tested that because the FBI manual says don't do that. That's not what happened here. They didn't upload it. What in the statute says they have an obligation to upload it? This case is not about whether they had an obligation to upload it. It's about their specific determination that it was ineligible. So it is critical to your argument that the reason they gave for not uploading it was that they were prohibited from doing so? Well, whether or not the FBI applied the manual, and here they did, the manual which the FBI put in place binds its discretion, and so it needs to consider these factors in making an eligibility determination. Just one last one. It prohibits them from putting something in. It doesn't compel them to put something in. Here they didn't upload it. That's right. So what is the problem? Why isn't that just a discretionary decision? One answer might be, and I'm just trying to figure out whether this is your position, because the reason the agency gave for not uploading it was that they were prohibited from doing so. Is that your position? The challenge here is that the reason they gave was arbitrary and capricious. Had they determined that it met those factors, they perhaps then could have made a decision we're still not going to upload this, but they applied the putative perpetrator factor in an arbitrary and capricious fashion, and that's why it must be set aside. Thank you. Good morning, Your Honors. Assistant United States Attorney Anupama Balakrishna on behalf of the FBI. Good morning. May it please the Court if I may start with the jurisdictional issue. The several cases involving 701A2 of the APA all start with the same question, and that question is, what does the statute say, or what did Congress intend? Here, as the District Court correctly concluded, nothing in the text, structure, or legislative history of the DNA Act indicated that Congress intended to cap in the FBI's discretion regarding what must be included in the database. The appellants here devote one sentence in their brief at page 15 to the statutory text. That's it. One sentence, and that sentence refers to Part B of Section 12592, no, sorry, Part A, which is permissive, and says that the FBI may have an index. So instead, what they urge the Court to do is to sort of ignore everything that's in the statute and look straight to the manual. That's not what the Supreme Court has instructed courts to do. That's not what the District Court did below, and that's not what this Court should do. Just because the manual exists does not mean there's a law to apply regarding this claim. If they had uploaded material and stated that the material they were uploading was unrelated to a putative victim or to the crime, could we review that? I think that would be a claim under the APA, because the statute in the APA says these are the things that can't come in. Okay, so now if the agency says the reason we're not uploading something is because we're prohibited by that statute from doing it, why aren't they giving a ground that relates to law that we can apply? Because you just said there is law to apply on what they're prohibited from doing. Well, Your Honor, it would depend on the reason. For example, I think the hypothetical is if what is they put something in and the thing that they put in, but that's not the question. You've agreed that if they put something in that is prohibited by the manual, we could review that determination. If it's prohibited by the statute. Yeah, because the statute incorporates the standard from the manual. The statute in Part B of Section 12592 explains what can't come in, and that's only part of what's in the manual, and that has to do with quality control, proficiency testing of the lab, and privacy. So if the FBI decided to let something in that didn't adhere to those standards that are in the statute and also in the manual, in that situation there would be law to apply. Okay, so now, if that's right, if the FBI gives us its reason for not uploading something, the fact that the thing they would upload doesn't meet those standards you just articulated, couldn't we review that decision because as the case would come to us, the agency would only have given a reason for not doing something which was based on their claim that they had no authority to do it? Often we review that question even when the underlying decision is discretionary. I understand what you're saying now, and I think the answer to that question is no, because there's nothing in the statute that says what must come in, what has to come in. I agree with that. What I'm asking is if an agency gives us its reason for not exercising discretion, the fact that the statute bars it from exercising it, why can't we review whether they're right about that? Because one way to read what the agency has said is we haven't exercised our discretion. We just asserted we had a legal prohibition for acting. If we disabuse them of that notion, they could then go back and exercise their discretion. We do that often in agency decisions. In that hypothetical, we have a situation in which the agency says, we're not uploading this evidence because we can't. Correct. And your Honor is asking whether you could review that. Correct. I think the answer is still no, because the idea is Congress has committed the discretion about what must be uploaded to the agency. But the idea would be the agency hasn't exercised any discretion. That is, it simply said it doesn't have discretion, and we could disabuse it of that mistake by applying the law of the statute, which tells us what their discretion is. What their discretion is about what can't come in. Correct. If the agency's only reason for not having put it in is because they said we can't do it, we could just review them and tell them you're wrong. You can do it. Now, if you want to exercise your discretion and not do it, that we can't review. But under Chenery, we don't know that they've actually exercised their discretion in that instance. So we vacate the amendment and let them then exercise their discretion. Okay, but here, I don't think there's been a claim that they didn't exercise their discretion. And I understand what you're saying in another situation where that could be a claim. To be honest, I really haven't thought about it that way. So I think it might be difficult. So the last question in the chain would be, why can't I read this record to be the agency saying they are not allowed to upload it because it doesn't meet the statutory standards as fleshed out in the FBI manual? Well, the statutory standards are fleshed out in the FBI manual. But the particular issue in this case, which is whether or not the evidence was connected or attributable to a punitive perpetrator, is nowhere in the statute. It has nothing to do with anything that Congress intended. That is something that the FBI determined was important for their database, and they have the discretion to do that. They have the discretion to have a database. Congress has said, okay, if you have a database, your database must follow or address certain concerns, and those concerns are quality control, privacy, proficiency testing. That's what the FBI must look at when they're evaluating whether or not something comes in. The statute doesn't cabin that discretion in any other way, and the issue in this case is about another way. It's another thing that they're looking at, which is whether or not the evidence is attributable to a punitive perpetrator. So it's not something that the statute speaks to. There's no criteria in the manual about the particular question that these appellants are asking the court to evaluate, that they're claiming that the FBI didn't evaluate. So what do you make of this part of the statute in A, which it says it shall include only information on DNA identification records based on analyses performed on behalf of a criminal justice agency in accordance with publicly available standards that satisfy or exceed the guidelines for quality assurance? Isn't that a reference to the manual implicitly? Are you talking about B? I'm talking about A. A? Unless I switch into B. You're talking about 12-592-A or 12-592-B? I don't know. I think you're talking about B, right? Because it says information in the index described in subsection A shall only include information on DNA identification records and analyses that are 1, 2, and 3. Correct, in accordance with publicly available standards that satisfy or exceed. So isn't that the FBI manual? No, actually. Is that not publicly available? Not at the time. If you look at the legislative history, which is cited in our brief, H.R. 103-45, they kind of talk about how this all came into effect. And what was going on there was that they knew that the FBI was developing this database. They also recognized that DNA evidence, while very powerful, has serious privacy concerns because you have people's biological information. You said not at the time. You mean not at the time of the enactment of the statute. No. At the time of the enactment of the statute, I'm trying to – Okay, sorry. At the time of the statute, they added this because they wanted to – Is the FBI manual a publicly available standard? Yes, Your Honor. Are you saying the statute didn't contemplate that this provision would apply to new publicly available standards? No, no, that's not what I'm saying. The legislative history shows that there were three things that Congress cared about, really, in this act. Privacy, quality control, and proficiency testing of labs. So the way the statute is structured sort of reflects all those concerns. And if you look at Section C of the statute, okay, they talk about Section B as being about quality control and privacy. So at the end of the day, what the NDIS manual does is it really does focus on the same things that Congress was focusing on, quality control, proficiency testing, and privacy. And privacy was a big thing that they were looking at because there was a lot of concern about unknown people's samples being put in this national database. That seems to be consistent with the idea that the manual's prohibition against uploading things that aren't related to the crime scene would be a way of ensuring the very thing Congress wanted to ensure, which is to protect people's privacy. Yes, so is what Your Honor asking is if the claim was that the FBI didn't upload something because they thought they couldn't, would that be reviewable? Right. Maybe? Right, and so then I'm just asking on this record, why can't I read the record to be that's exactly what the FBI's telling me. They're saying they can't because of the manual, which is a publicly available standard that is in place to protect privacy. Therefore, it's just the kind of thing Congress didn't want us to put in so we can vacate and remand. And if the agency now wants to exercise its discretion, knowing that it can put it in, it could go ahead and do that. But that would only be if their judgment was arbitrary and capricious. You've been asking us not to even get to that question because it's committed to agency discretion. Right, and I think the answer to that is that particular question that they said no about was not one of these things that Congress talked about in their statute. They said two different scientists and then the third was the NDIS custodian independently determined that this particular sample was not attributable to a putative perpetrator. While that is something that the manual says that should be considered, the manual contains absolutely no criteria about how you're supposed to consider whether something is left attributable to a putative perpetrator. The manual leaves that to the discretion of the scientists who are tasked with making that decision. And in this case, and I think what's important to note here is this is not a criminal case that's before you. The FBI was not involved in swabbing or investigating or any of these things. The FBI received the information from the state. The state said our two scientists looked at this. We don't think it's connected to the crime and here's why. The FBI took what the state gave them and agreed with them. And that was based on the FBI's determination, right, that this particular piece of evidence was not attributable to a putative perpetrator. It's not the type of information that should be in our index. It's not eligible. Let me ask you something on the factual scenario you just laid out. You said that the Commonwealth gave the FBI the information stating we don't think it's attributable. They kept this evidence all of those years, tested it themselves, and also tested it for the purpose of trying to determine if the DNA matched the defendants. It's just curious that given their history with the evidence they would put in writing to the FBI once there's been a court order, a fact that would dissuade the FBI from doing the testing. I'm sorry. So is your honor saying that the state did something that would dissuade the FBI from doing the testing? Well, they said that they didn't think it was attributable to a perpetrator or connected to the crime scene having held onto it and tested it themselves. Well, there's a couple points I would want to make in response to that question. And the first thing is that every crime scene has unique conditions and law enforcement may conservatively collect many items which are later determined not to be forensically connected to the crime. It's the laboratory that's really tasked with that evaluation. And here what we had is a state who looked at it and said, well, we don't think this is connected to the crime, right? And then they sent that information to the FBI CODIS custodian. That CODIS custodian looked at the law enforcement notes and the photos and determined that the condom's physical condition, which is something that the panel alluded to in the other half of this argument, the physical condition of the condom, right, was breaking apart. There was really no inside or outside. It was breaking apart. And we have swabs from that condom. And the condition of the condom indicated that it probably had been there for quite some time. It was covered in sawdust, it was breaking, it was disintegrating. So at this point, I think the FBI had enough to look at this and say, its connection to the crime is not clear and the connection to the perpetrator is even less clear. And what has been tested is not connected to the victim at all. So why? The counsel was there. Was the condom ever tested? Because I gather this is a point that the appellant is making. Was the outside of the condom ever tested at any level to determine whether the victim's DNA was on the surface of the condom? Again, that seems to be a very important point to the appellant, understandably because if her DNA was on the surface of the condom, that would provide a link to the crime. That has never been done, is that correct? It's not on this record, and I will say that in their brief, they speak about it being at the inside of the condom, but they don't cite to anything. And at the point the FBI got this documentation to look at, it's unclear there was an inside and outside. The condom is breaking apart. According to the forensic testing, it was attached to the complaint.  It doesn't say swabs from the inside of the condom. It does say that there was sperm and non-sperm analysis. It's not in this record, and honestly, Your Honor, I don't think it matters as much as the appellants think it does. Can you just help me with something? The district court did not reach the question of arbitrary and capriciousness, correct? You raised it as an alternative ground for affirming the decision below. Absolutely. Since this doesn't come as direct review to us, you can review this in the district court. What is the process for deciding the question of arbitrary and capriciousness? I understand you think we shouldn't get to that question, but if one were of a different view, what is the process in district court for building the record that would be relevant to the arbitrary and capriciousness review determination? Would the district court make findings? Would those findings be anything we would have to defer to? There's lots of facts, and I don't have any fact findings on any of those questions by district court. And I'm just wondering whether if we got to that, notwithstanding the points you make about arbitrary and capriciousness, all they're asking for us to do is to vacate and remand so that it goes back to the district court to address that question. And I'm not understanding why we shouldn't do that if we think that there is no jurisdictional bar to us doing it, which maybe we'll find that there was, but if we think there isn't one, why wouldn't the prudent thing to do to just go back to the district court rather than us to just resolve this with the district court never having had any record on any of these issues? I disagree that the district court didn't have a record, Your Honor, in that a record was provided. We did move to dismiss in an alternative for summary judgment and added everything that the FBI considered. Could it make findings on that record? I don't think so, because at the end of the day, for example, the 12B1 analysis... What is the function of the district court in arbitrary and capricious review under this scheme? What does this do? The function of the district court is they review the decision of the agency to determine whether or not it was arbitrary and capricious. The function of the appellate court is also to review the agency's decision to determine whether it was arbitrary and capricious. So we'd be doing the exact same thing. And is there any additional fact-finding that could be made or no? No, the record that the agency certifies is what was before it. They can't augment that record? Well, I mean, they're in very specific situations. They can't do discovery about the reasons for why the agency made this decision, et cetera? There's no discovery in APA cases except in very exceptional circumstances. The record is what the agency says it is, and the agency has to live or die on that record. In this particular case, I mean, very, very rare circumstances, and I think this case had those circumstances in front of it in something like the Boston redevelopment case, the Long Life case a couple of years ago. Very rare that that happened. Here, I would say that the record's already before the court. It was already before the district court. The district court, I think, in Sputnik 2 noted that he didn't think that the record supported the agency's decision. So it didn't come in as a certified administrative record as it would in a regular appeal, but I think there's a move for this court to look at what the FBI did, look at what the FBI considered, and decide that what it did was not arbitrary and capricious. Counsel, I thought the district court, although in a very summary fashion, in a footnote, I thought the district court actually did say, if I were to reach that issue, I would conclude that the FBI's decision was not arbitrary and capricious. I thought the district court did say that. I think that would be true as well, and it should be also noted that there was a constitutional claim that went on, and the district court considered some of these issues when it was deciding the constitutional claim. So I think that there's enough in the district court decision to sort of telescope what the district court would find on the arbitrary and capricious standard. But I would like, in closing, as I see my time is up, is to explain that there are significant privacy concerns regarding the access that these plaintiffs asked for, and at the end of the day, if the court is going to decide whether or not the action was arbitrary and capricious, at the end of the day, the plaintiffs... There's a basis for exculpating defendants, and the statute does recognize that. If a sample were taken relating to a crime in which the defendant was implicated, and for some reason the DNA did not release that sample, the defendant could demand disclosure of the results of that test, could it not? I mean, to suggest this is all about privacy and to diminish the interests of a defendant in exculpation seems to me to misstate the scope of the statute. The concerns underlying the statute, excuse me. Right, and I think there's a difference between the statute and the database, and I think your auditor is right. The database is for law enforcement. The database is to solve crimes, and if there is a match, it could provide an exculpation for the defendant. At the same time, this particular action is not depriving the defendant of their defense. The defendant has a sample. The defendant has the results. The defendant can say in their criminal trial, listen, there was this condom. They didn't test it. What kind of investigation were they leading? I mean, the defense is still there. All we are saying is that the statute left this particular question to the discretion of the agency, and as the Supreme Court said in Lincoln v. Vigil, if the agency acts in accordance with the permissible objectives of the statute, there is no room for the court to intrude on that. And I think it bears repeating that the FBI didn't do this investigation. They're not prosecuting this case. They're just administrating a database that the plaintiffs want access to. We have here defendants. They spent 20 years in prison. They've now been released. They're scheduled for a new trial. It is their belief and hope, I gather, that if a DNA sample were uploaded into the system and then a match were found, there would still be a lot of questions to answer. There's a danger that an innocent person could be implicated, but that could certainly advance their defense in a significant way. Absolutely, Your Honor, but I think what they're asking the FBI to do is sort of ignore their own protocols, ignore their own procedures, and make an exception for them. And as sympathetic as that is, the FBI, to be fair, would have to make that same exception for every criminal defendant who has found themselves in this situation and every private citizen who wants access to the database. And that's a use of the database that neither Congress nor the FBI has ever intended. And while a single request may not be a big deal, the precedent it creates would clog the system. So for all of these reasons and the reasons in my brief, the FBI asks that the district court affirm the judgment of the district court and dismiss the complaint. I'd like to begin, if I could, with a statement that was made that there was no inside or outside of the condom at the time it was recovered. Now, consider the statement that's being made today versus what's in the record. And here's a statement from the trial testimony in 1994 of the forensic scientist who collected the condom and then tested it. And this is on page 261 of the appendix. But I did swabbings of the inside of the condom to determine whether seminal fluid residue was present in the condom, which it was. Now, I think that highlights one of the issues here with FBI's determination is that it is 25 years after the fact. Looking at a small snippet of that forensic scientist's notes and ignoring the broader conclusion that that forensic scientist reached, that this condom was relevant to the crime and that it was tested for that purpose in 1993. That also highlights the fact that the FBI's determination here and the Commonwealth's determination in 2017 flies in the face of how the condom was treated for 25 years. Until the DNA evidence showed that the condom was not linked to the plaintiffs in this case, law enforcement uniformly viewed the condom as being linked to the crime. It was only when the DNA testing showed the condom did not link to the plaintiffs that that view changed. And I think the fact that the FBI has failed to consider the full record here means that the agency has failed to consider relevant factors in making its determination. Once again, the small snippet of what the forensic scientist did in 1993 is insufficient for the FBI to make an informed judgment as to what happens. As to the privacy concerns argument that was raised, I think it would be grossly unfair to think that the plaintiffs here would not get the benefit if there was a match in the DNA system. But more importantly, the NBI's manual provides that if there is a match, Massachusetts will receive that information and then it can be shared with the plaintiffs. And finally, returning to the DNA Act itself, it is not simply to solve crimes. It's not the law enforcement statute. It explicitly provides for criminal defendants to have access to information so that they can defend themselves in criminal cases.